UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

EKO BRANDS, LLC,

               Plaintiff,

    v.

ADRIAN RIVERA MAYNEZ
ENTERPRISES, INC., and ADRIAN
RIVERA, an individual,

               Defendants.

CASE NO.  2:15-cv-00522-JPD

ORDER ON POST-TRIAL
MOTIONS

## I.     INTRODUCTION AND SUMMARY CONCLUSION

       The five-day jury trial of this matter concluded on Friday, June 8, 2018, with the jury

reaching a unanimous verdict on all issues. Dkt. 242.  The jury awarded plaintiff Eko Brands,

LLC ("Eko") damages in the amount of $192,801.00 for infringement of U.S. Patent No.

8,707,855 ("DeMiglio '855 patent"), found for defendant Adrian Rivera Maynez Enterprises,

Inc. ("ARM") on the question of willfulness, and found that Claims 5, 8, 18 and 19 of U.S.

Patent No. 8,720,320 ("Rivera '320 patent") would have been obvious to a person having

ordinary skill in the art. *Id.* Following the trial, Eko filed motions seeking (1) judgment as a

matter of law or a new trial, enhanced damages, and pre-and post-judgment interest (Dkt. 248);

(2) attorneys' fees and costs (Dkt. 256); and (3) permanent injunctive relief (Dkt. 247).  Having

reviewed the parties' submissions, the governing law, and the balance of the record, the Court

ORDERS as follows: (1) Eko's request for judgment as a matter of law or a new trial on the

issue of willfulness as well as enhanced damages, Dkt. 248, is DENIED; (2) Eko's motion for

pre- and post-judgment interest, Dkt. 248, is GRANTED IN PART and DENIED IN PART;

(3) Eko's motion for attorneys' fees and costs, Dkt. 256, is GRANTED IN PART and

DENIED IN PART; and (4) Eko's motion for permanent injunctive relief, Dkt. 247, is

GRANTED.

## II.     DISCUSSION

### A.  Eko's Motion for Judgment as a Matter of Law or a New Trial on Willfulness

Federal Rule of Civil Procedure 50(a) provides that the Court may direct the entry of

judgment as a matter of law where "the court finds that a reasonable jury would not have a

legally sufficient evidentiary basis to find for the party on that issue." A directed verdict must

be entered where "there is no substantial evidence to support the claim." *Rutledge v. Elec.*

*Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir. 1975) (quoting *Cleary v. Nat'l Distillers &*

*Chem. Corp.*, 505 F.2d 695, 696 (9th Cir. 1974)). A motion pursuant to Rule 50(a) may be

made at any time before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2). However,

the "failure to file a Rule 50(a) motion precludes consideration of a Rule 50(b) motion for

judgment as a matter of law." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083

(9th Cir. 2009).[1]

---

[1] A court may only grant a renewed motion pursuant to Rule 50(b) "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014) (internal punctuation omitted). The court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Here, Eko's request for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) is denied, as no motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) was requested by Eko at trial. This forecloses any relief pursuant to Fed. R. Civ. P. 50(b), as there is no "renewed" Rule 50(a) motion before the Court. *See Freund v. Nycomed Amersham*, 347 F. 3d, 752, 761 (9th Cir. 2003); *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F. 3d 1098 (Fed. Cir. 2003). Eko's alternative motion for a new trial pursuant to Fed. R. Civ. P. 59 is not so foreclosed.

Under Fed. R. Civ. P. 59(a)(1)(A), the "court may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." A trial court "enjoys broad discretion with regard to a new trial motion." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) ("The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court.")). The Court may grant a new trial only "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1087–88 (9th Cir. 2009) (internal quotation marks omitted).

Eko argues that Jury Instruction 40, which was based entirely on the National Patent Jury Instructions ("NPJI") No. 4.1., impermissibly described the burden of proving willfulness following the U.S. Supreme Court's decision in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016), and that the evidence was such that a properly instructed jury would have rendered a different decision. Dkt. 248 at 6. In particular, Eko's concern focuses on the last few sentence of the first paragraph of the instruction, which state that willful infringement is "especially worthy of punishment" and reserved for "egregious behavior." *Id.* at 7. Eko

argues that "these two statements invited the jury to make the legal decision as to whether damages should be enhanced, or whether it is an exceptional case, rather than limiting the jury to the underlying factual question of whether the infringement was willful." *Id.*

Eko's own proposed jury instruction on willfulness provided to the Court, however, was modeled on NPJI 4.1 and still included this language. Dkt. 215-1 at 69. This was also true of ARM's proposed jury instruction on willfulness. Dkt. 215-1 at 72.[2] Thus, Jury Instruction 40, in its original form agreed to by both parties, provided as follows:

> Eko argues that ARM willfully infringed the Eko 855 patent. For purposes of this case only, you are to assume direct infringement of amended claim 8 of the Eko 855 patent. Therefore, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether Eko proved that it is more likely than not that the infringement was especially worthy of punishment. You may not determine that the infringement was willful just because ARM knew of the Eko 855 patent and infringed it. *Instead, willful infringement is reserved for only the most egregious behavior, such as where infringement is malicious, deliberate, consciously wrongful, or done in bad faith.*
>
> To determine whether ARM acted willfully, consider all facts. These may include, but are not limited, to:
>
> (1)     Whether or not ARM intentionally copied a product of Eko that is covered by the Eko 855 patent;
>
> (2)     Whether or not ARM reasonably believed it did not infringe or that the patent was invalid;
>
> (3)     Whether or not ARM made a good-faith effort to avoid infringing the Eko '855 patent, for example, whether ARM attempted to design around the 855 patent; and
>
> (4)     Whether or not ARM tried to cover up its infringement.

---

[2] Moreover, when the Court held an informal conference with the parties on the evening of June 6, 2018 to discuss the proposed final jury instructions, neither party raised any concerns regarding this language in the willfulness instruction. In its brief, Eko simply asked the Court to include an additional factor in the instruction to "reflect recent authority holding that ARM's continued sale of the allegedly infringing articles after the filing of his lawsuit is a factor that can also serve as a basis for a finding of willfulness." Dkt. 215-1 at 73 (citing *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1022 (N. D. Cal. 2017)).

Dkt. 235 (emphasis added).

On the morning that the final jury instructions were to be read to the jury, Eko objected – for the first time – to the language of Jury Instruction 40 requiring "the most egregious behavior" that is "worthy of punishment." The Court directed the parties to file briefs on the issue by noon, if they wished to explain their respective positions before the jury was instructed, and Eko did so. Dkt. 234. The Court reviewed the relevant authority and took Eko's concerns into account by amending the last line of the first paragraph in Jury Instruction 40 to remove the words "only the most egregious behavior," and provide "[i]nstead, willful infringement is reserved for egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith." Dkt. 235. The jury was instructed accordingly. Dkts. 235-36.

If the instruction on willfulness, as amended, was improper in light of the recent *Halo* decision, in this Court's view the error would not have been harmless as argued by defendants. In this case, ARM continued its infringing conduct for a period long after it conceded that—given the claims construction order—it was infringing. Indeed, ARM continues to do so today, and only recently began to develop a design-around to avoid infringement. ARM's conduct throughout the three and a half year period in question was quite intentional, something that Mr. Rivera acknowledged during the trial. Moreover, after approximately five and a half hours of deliberating, the jury advised the Court that they had reached a verdict on all questions except the issue of willfulness (question two of the special verdict form), and that they had strong views on both positions regarding that question and did not believe additional time

1   would render a unanimous decision. Dkt. 241. It was only after the Court instructed the jury

2   to go back and re-read the instruction on willfulness that the impasse was broken. Dkt. 239.[3]

3           Accordingly, the Court DENIES Eko's motion for a new trial. Dkt. 254. Eko has

4   failed to identify any authority - and the Court is aware of none – holding that National Patent

5   Jury Instruction No. 4.1 is no longer a correct statement of the law, following the *Halo*

6   decision. As a result, the jury's verdict was also supported by substantial evidence in the

7   record, such as Mr. Rivera's testimony that he sincerely believed he would ultimately prevail

8   in his ongoing litigation against Eko and therefore his products would be found to be non-

9   infringing. If, however, this pattern instruction is no longer correct because it improperly

10  conflates the issue of willfulness with the Court's ultimate decision whether to enhance

11  damages, and places too high of a burden on a plaintiff seeking to prove willfulness, then the

12  Court agrees with Eko that the erroneous instruction would not be harmless.

13          B.  Eko's Motion for Enhanced Damages

14          As discussed above, the jury's verdict found that ARM's infringement was not willful.

15  Dkt. 242 at 1. In light of this verdict finding, the Court will not enhance damages. *See Halo*

16  *Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. St. 1923, 1932 (2016) (noting that although district

17  courts enjoy discretion in deciding whether to award enhanced damages, and in what amount,

18  "such damages are generally reserved for egregious cases of culpable behavior."). *See also*

19  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992) (factors to consider in

20  exercising discretion to enhance damages).

21          The Court notes, however, that had the jury returned a finding of willfulness, the Court

22  would have considered granting plaintiff's motion for enhanced damages. This case has been a

23

24          [3] As discussed above, Eko had raised a timely objection to the instruction, and therefore the claimed error was preserved.

classic example of scorched-earth litigation. The Eko '855 patent has been subject to the initial examination by the Patent Office, subsequent reexamination proceedings, proceedings before the International Trade Commission, a subsequent appeal to the Court of Appeals for the Federal Circuit, this district court, a second premature appeal to the Court of Appeals for the Federal Circuit, and a companion case in the Central District of California. The Court thanked the lawyers and the parties for the professional way in which they streamlined the case which was actually tried to the jury. However, it was also clear throughout the trial proceedings that this Court was merely a way station for further appeals to the Court of Appeals for the Federal Circuit, and streamlining the trial did not make up for the overall conduct of the litigation.

In their testimony and by their litigation conduct, Mr. Rivera and Mr. Ditta made it clear that ARM was not going to stop its infringing or litigation activities regardless of any court decision.[4] ARM's infringing conduct has persisted, even beyond the dates of stipulations of infringement (subject to appeal); ARM acknowledged it was acting intentionally regarding continued infringement; and ARM didn't start working on a design of a new non-infringing alternative until December 2017. Moreover, neither Mr. Rivera nor Mr. Ditta were credible witnesses. Indeed, the Court finds that they were substantially less than candid when denying receipt of Eko's '855 patent and Eko's offer to license in January 2015. Exs. 99 and 100. They were notified both by email and by Federal Express delivery. Their denials required a late subpoena to a law firm and testimony that established that ARM did, in fact, receive notice

---

[4] Eko cites to a post-trial declaration from Eko manager Mr. Legler, asserting that Mr. Rivera told him in March 2016 that "he invented this product and we had copied it. Mr. Rivera then stated that there was no amount of money that he would ever pay and the only way that he would stop pursuing Eko was if it went out of business." Dkt. 249 (Legler Decl.) at ¶ 3. Because this testimony was not offered at trial, the Court will not consider it now. However, the Court does not need to consider such statements to come to the conclusion that ARM, a larger company, has engaged in an overall scorched-earth litigation strategy against Eko.

1 in January 2015, and the testimony of Mr. Rivera and Mr. Ditta denying such knowledge was

2 patently false.

3 Finally, the conduct of the defendants required half of the trial to be dedicated to the

4 issue of whether Claims 8 and 20 of the Rivera '320 patent would have been obvious to a

5 person skilled in the art. As discussed in greater detail below, this part of the trial turned out to

6 be a charade.

7 As noted above, however, the jury must have credited Mr. Rivera's testimony that he

8 sincerely believed ARM would be vindicated on appeal, and that his products would ultimately

9 be found to be non-infringing. The Court will not disturb the jury's finding of non-willfulness,

10 which was supported by substantial evidence in the record. As a result, Eko's motion for

11 enhanced damages is DENIED. Dkt. 254.

12 C. Eko's Motion for Pre-Judgment and Post Judgment Interest

13 Eko also requests pre-judgment and post judgment interest on the damages award at the

14 prime rate plus 2% (or 6.75%), compounded daily. Dkt. 148 at 29. As discussed below, Eko's

15 motion is GRANTED IN PART and DENIED IN PART. Dkt. 248 at 29-30.

16 Specifically, Eko asks the Court to award prejudgment interest on the damages award

17 because Eko was deprived of use of the damages award from the date of ARM's infringement

18 to the date of judgment. *Id.* (citing *Nickson Industries, Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795,

19 800 (Fed. Cir. 1988)). Eko asserts that prejudgment interest applies to primary or actual

20 damages, and the rate (and whether it is compounded) is left largely to the discretion of the

21 trial court. *See Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969

22 (Fed. Cir. 1986). Where courts have elected to award prejudgment interest, they have

23 generally used the prime rate.

24

1    Eko's motion for prejudgment interest on the jury's damages award in this case is

2    DENIED. Dkt. 248 at 29. With respect to the attorneys' fee award issued by Judge Lasnik,

3    Dkt. 182, the undersigned previously ordered an award of prejudgment interest at the rate of

4    12% per annum pursuant to Washington State law, citing RCW 19.56.010 and 19.56.020, from

5    the date of the Order through the entry of judgment. Dkt. 252. Unlike the jury's damages

6    award, Judge Lasnik's order made the amount of the sanctions awarded a liquidated obligation,

7    susceptible to interest calculation. *See Humphrey Indus. v. Clay St. Assocs.*, 176 Wash. 2d

8    662, 672-73, 295 P. 3d 231 (2013) (trial court abused discretion in failing to award

9    prejudgment interest on attorney's fee award). Although the rate cited in the Court's June 14,

10   2018 Order is correct, the statutory cite should have been to RCW 4.56.110(4), which sets a

11   maximum rate on judgments by incorporation of RCW 19.52.020. *See also Hansen v.

12   Rothaus*, 107 Wash.2d 468, 472-75, 730 P.2d 662 (1986) (prejudgment interest is based on the

13   principle that a defendant "who retains money which he ought to pay to another should be

14   charged interest on it.").

15       Finally, Eko's request for post-judgment interest is GRANTED, although not at the

16   6.75% rate requested by Eko. Dkt. 248 at 30. The damages award will bear interest from June

17   14, 2018, the date of the original judgment, at the federal judgment rate. *See* 28 U.S.C. § 1961.

18       D. Eko's Motion for Attorneys' Fees

19       Eko seeks an award of its attorneys' fees in connection with this litigation. Dkt. 256.

20   The Patent Act provides for an award of reasonable attorney fees to the prevailing party in

21   exceptional patent cases. 35 U.S.C. § 285. In *Octane Fitness, LLC v. ICON Health & Fitness,

22   Inc.*, ___ U.S. ___, 134 S. Ct. 1749, 1756, 188 L.Ed.2d 816 (2014), the U.S. Supreme Court

23   clarified how courts should analyze fee requests under the Patent Act. The Supreme Court

24   held that a district court analyzing a request for fees under the Patent Act should look to the

"totality of the circumstances" to determine if the infringement was exceptional. *Octane Fitness*, 134 S. Ct. at 1756. The court also explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* The Court eschewed a "precise rule or formula for making these determinations" and instructed that equitable discretion should be exercised 'in light of the considerations we have identified.' " *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L.Ed. 2d 455 (1994)). Specifically, the Court cited a "'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 1756 n.6 (quoting *Fogerty*, 510 U.S. at 534 n.19). The Court further clarified that the applicable burden of proof for fee entitlement was the preponderance of the evidence standard and not proof by "clear and convincing evidence." *Id.* at 1758.

The Court concludes that this is not an "exceptional" case warranting an award of attorney's fees for the entire litigation. As discussed above, Eko did not prevail on all its claims against ARM in this case. Specifically, although the jury awarded Eko damages for ARM's stipulated infringement of Eko's patent, the jury awarded a significantly lower amount of damages than Eko's expert Mr. Voth testified could reasonably be awarded in this case. In addition, the jury found for ARM on the question of willfulness. Dkt. 242. Looking at the allegations as a whole and the totality of the circumstances in this case, the Court finds that the portion of the trial relating to damages for infringement and whether ARM's infringement was willful is no more exceptional than other patent cases involving similar conduct.

The same cannot be said, however, with respect to the portion of the trial relating to the issue of whether the Claims 8 and 19 of the Rivera '320 patent were invalid as obvious pursuant to 35 U.S.C. § 103. Claim 8 of the Rivera '320 Patent is dependent upon Claim 5, and Claim 19 is dependent upon Claim 18. The only element added by Claims 8 and 19 to independent claims 5 and 18 was the claim of reusability.

In September 2014, ARM filed a complaint with the International Trade Commission ("ITC") alleging that a number of competitors, including plaintiff, were importing beverage capsules that infringed Claims 5-8, and 18-20, in violation of Section 337 of the Tariff Act of 1930, 19 U.S.C.§ 1337. *Adrian Rivera, et al. v. Int'l Trade Cmmn,* Court of Appeals for the Federal Circuit, Cause No. 2016-1841 (2017) (Trial Ex. 96). During the course of the proceedings, ARM withdrew its allegations with respect to Claims 8 and 19. *Id.* at 6. The ITC found that claims 5-7, 18, and 20 were invalid for lack of written description, and that claims 5 and 6 were additionally invalid as anticipated by U.S. Patent No. 6,079,315 ("Beaulieu '315" patent). *Id.*at 7. The CAFC affirmed the ITC decision holding Claims 5-7, 18, and 20 to be invalid for lack of written description. The CAFC also held that because the claims were invalid for lack of written description, it was unnecessary to reach the merits regarding anticipation. *Id.* at 15.

At the pretrial conference, the Court raised the issue as to why it was necessary to try the issue of obviousness of Claims 8 and 19, in light of the actions by the ITC and the CAFC, holding that the independent claims upon which Claims 8 and 19 were dependent were no longer valid (Claims 5 and 18). The parties explained that the initial ITC preclusion order included Claims 8 and 19. Eko defaulted on the ITC proceeding, because it manufactured its products in the United States, and wanted to avoid expenses associated with these proceedings. This had the practical effect of requiring Eko to manufacture its products in the United States,

1 | and prohibited Eko from changing its production processes by moving them abroad.

2 | Subsequently, ARM withdrew Claims 8 and 19 from the ITC proceeding. When the ITC

3 | found Claims 5-7, 18 and 20 to be invalid for lack of written description and anticipation,

4 | which was affirmed by the CAFC as to the issue of lack of written description, the ruling did

5 | not specifically include Claims 8 and 19, because these two claims had been withdrawn.

6 | Consequently, the ITC exclusion bar relating to Claims 8 and 19 remains in effect, even though

7 | the independent claims upon which these dependent claims rest are invalid. *See* Dkt. 268 at

8 | 19:9- 21:6 (pretrial conference transcript).

9 | At the pretrial conference, both counsel were asked why the trial had to include the

10 | issue of invalidity for obviousness claims of 8 and 19 of the Rivera '320 patent. Eko advised

11 | the Court that it had requested ARM to agree to lift the preclusion order regarding Claims 8

12 | and 19, but ARM would not do so. *Id*. at 20:11-24. ARM would not stipulate to the issue of

13 | obviousness, notwithstanding the finding by the ITC that claims 5 and 6 were invalid as

14 | anticipated by the Beaulieu '315 patent. Moreover, ARM would not agree to a covenant not to

15 | sue, which would have obviated a trial on the issues. The only remedy available to Eko,

16 | therefore, was to have the claims declared invalid on obviousness grounds. *Id*. at 20:11-24.

17 | ARM offered no further explanation to the Court for its position, except to say that "the limited

18 | exclusion order and the cease and desist order on Claims 8 and 19 issued by the ITC against

19 | Eko Brands, that still stands. And so from a client perspective, that's the government order

20 | that still exists, is still valid, and so ARM is not willing to write that off." *Id*. at 21:1-6. A trial

21 | on the issue of obviousness of Claims 8 and 19, of course, required considering the issue of

22 | obviousness regarding independent Claims 5 and 18, again, notwithstanding the ITC

23 | anticipation determination regarding Claim 5.

24 |

1    ARM argues that because the Court previously found factual questions as to

2    obviousness and invalidity that precluded summary judgment, Dkt. 94, and did not award fees

3    to Eko as a result of ARM's defense of the '320 patent, Dkt. 182, the Court should not find that

4    ARM's defense of its patent at trial was so unreasonable as to be considered "exceptional."

5    Dkt. 266 at 7-8.  However, it was not until the trial was well underway that it became apparent

6    that ARM was not seriously trying to defend the obviousness of the claims at issue.  As noted

7    above, the Court finds that ARM's insistence on trying this portion of the case was largely a

8    charade used for the purpose of extending the life of the earlier ITC preclusion order, thereby

9    prejudicing Eko's ability to consider manufacturing alternatives.

10   Moreover, although ARM insisted that the underlying factual issues were for the jury to

11   decide (ARM refused to allow the Court to make findings, despite acknowledging that the

12   ultimate decision on obviousness was a legal issue), ARM proposed no questions for the

13   special verdict form other than asking the Court to allow the jury to issue an advisory opinion

14   on the penultimate question of obviousness.  *Id.* at 27:10-11.  With the exception of some

15   apparent collaboration between the parties following the final pretrial conference, the task of

16   trying to prepare a workable special verdict form to accommodate ARM's desire to try the

17   issue of obviousness was left to plaintiff and to the Court.  ARM expressed concern that "the

18   number of items for the jury to decide will seem confusing," but did not make any meaningful

19   effort to prevent such confusion.  *Id.* at 27:5-7.

20   In its closing arguments, ARM seemingly acknowledged that its position on invalidity

21   was less than serious by devoting about one minute of its closing argument to the issue,

22   describing the obviousness decision as a "fairly pedestrian task" to the jury.  That, in

23

24

retrospect, was how seriously ARM dealt with the issue during the entire trial,[5] and yet this issue consumed a substantial amount of both the Court and Eko's resources prior to trial and during the trial. It also required a significant amount of the jurors' time, and required them to make highly detailed factual findings. Finally, after the verdict was returned, the Court asked ARM if it wished to make any further submission on the ultimate legal issue of obviousness prior to the Court deciding the issue and entering judgment. ARM declined. Dkt. 245 at 1-2.

Because the Court finds that ARM's actions regarding the issue of obviousness on Claims 8 and 19 were not made in good faith, but as an attempt to extend the time of the ITC preclusion order on these two claims directed against Eko, the Court finds this portion of the case to be sufficiently exceptional to warrant awarding Eko one half of the attorneys' fees incurred during the week of the trial (to reflect Eko's attorney time spent on the issue of invalidity of the ARM '320 patent), and all fees of Eko's expert, Dr. Howle, relevant to the issue of invalidity of claims 8 and 19 of ARM's '320 patent. *See* 35 U.S.C.§ 285; Fed. R. Civ. P 11.[6] Although there could perhaps be justification for awarding Eko's expenses as far back as the CAFC decision, the Court limits the sanctions to one half of the attorneys' fees for Mr. Lowe and Mr. Billick incurred during the trial itself (June 4, 2018 through June 8, 2018) and all of Dr. Howle's expert fees related to the issue of invalidity, as reflected in invoice #20180611. *See* Dkt. 257 (Lowe Decl.) at ¶ 17 (noting that Dr. Howle's expert fees related to the invalidity issue "total $42,087.50 out of the total charged by Dr. Howle in this case."); Dkt. 257, Ex. B at 9, 21 (fees for Mr. Lowe and Mr. Billick for 6/4/18 through 6/8/18 totaling

---

[5] In addition to failing on the primary indicators of obviousness, ARM did not bother to try to show secondary factors of non-obviousness. See Dkt. 268 at 47:19-23.

[6] The issues tried in this case were (1) damages for ARM's stipulated infringement of the DeMiglio '855 patent and willfulness and (2) obviousness of claims 8 and 19 of the Rivera '320 patent.

1  $28,231 and $13,780, respectively, or $42,011); Dkt. 257, Ex. F at 122 (Invoice #20180611

2  reflecting Dr. Howle's expert fees totaling $42,087.50).

3          Accordingly, plaintiff's motion for attorneys' fees and costs, Dkt. 256, is GRANTED

4  IN PART and DENIED IN PART.  Based upon the Court's review of plaintiff's attorneys' fees

5  application, Eko is awarded $21,005.50 in attorneys' fees for the week of trial ($28,231 for Mr.

6  Lowe plus $13,780 for Mr. Billick, divided by two) and $42,087.50 for Mr. Howle's fees

7  associated with invalidity of ARM's '320 patent, for a total of **$63,093.00**.

8          E.      Eko's Motion for Permanent Injunction

9          Eko moves for a permanent injunction against ARM's infringement of its patent.  Dkt.

10  247.  ARM argues that rather than issuing an injunction, the court should permit the parties to

11  engage in post-trial negotiations in order to negotiate an ongoing royalty rate until ARM's

12  redesigned products arrive in a few months.  Dkt. 259 at 4.  Specifically, ARM argues that it

13  should be permitted to sell the accused products for a limited period of time, with a portion of

14  the profits earmarked for Eko as a royalty.  *Id.*

15          To be entitled to permanent injunctive relief, Eko must establish the following four

16  factors: (1) it has suffered irreparable injury; (2) the remedies at law such as monetary

17  damages, are inadequate to compensate Eko for the injury; (3) the balance of hardships favors

18  granting the injunction; and (4) the public interest would be served by the issuance of an

19  injunction.  *eBay, Inc. v. MercExchange, LLC*, 547 US 388, 391 (2006).  Because Eko has

20  proven all four factors, its request for injunctive relief is GRANTED.  Dkt. 247.

21          *1.      Irreparable Harm*

22          The irreparable harm prong requires a link between the infringement and the alleged

23  harm.  *See Apple, Inc. v. Samsun Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012).  A

24  causal nexus can be demonstrated through "evidence that a patented feature is one of several

features that cause consumers to make their purchasing decisions," "evidence that the inclusion

of a patented feature makes a product significantly more desirable," or "evidence that the

absence of a patented feature would make a product significantly less desirable." *Apple, Inc. v.*

*Samsun Elecs. Co.,* 735 F.3d 1352, 1364 (Fed. Cir. 2013). The patentee does not have to

"show that the patented feature is the only and only reason for consumer demand," but only

"some connection" between the patented feature and demand for the infringing product. *Apple*

*Inc. v. Samsung Elecs., Co.*, 809 F.3d 633, 641-42 (Fed. Cir. 2015) (vacation denial of

injunction).

The Court agrees with Eko's contention that substantial evidence at trial showed that

Eko's invention had unique features, *i.e.* dual outlet probe receptacles, which helped drive

consumer demand.[7] In response to Eko's assertion of harm, ARM continues its campaign of

denigrating the patented contribution made possible by the Eko '855 patent – the increased

volume resulting from the dual outlet probe receptacles over the Solofill prior art, reusability

and protection for the filter and the brewing device.[8] Dkt. 259 at 5-7. ARM's constant

denigration of the value of the Eko 855 invention also ignores the fact that when Eko's

Ekobrew reusable filter was introduced, it received immediate market acceptance. It debuted

as the number one new grocery item on Amazon.com in 2011. It was also one of the five

finalists in the housewares design awards in 2012.

---

[7] Testimony at trial also showed that Eko's design permitted the user to use their own
brewing material, allowed for an increased volume of brewing material to be placed into the
device, largely eliminated the clogging associated with other capsules developed by other
companies, made it easier to use than several other capsules in the marketplace, and eliminated
the need for disposable paper filters.

[8] During the trial, defendant's consultant Dino Ditta, demonstrated that one can
intentionally insert the Eko reusable filter in an improper fashion, resulting in damage to the
filter. This, of course, is of no significant evidentiary value, because people can always
intentionally do the wrong thing. The Court was not impressed by the stunt. Obviously, the
jury was not either.

1    In addition, the irreparable harm includes the "loss" of the power to exclude a

2    competitor from using its patented invention.  Eko and ARM are direct competitors.  Eko has

3    lost sales to ARM selling its infringing products.  ARM has threatened Eko with non-stop

4    litigation and is continuing down this path even today.  Granting an involuntary compulsory

5    license on this form of technology robs Eko of the only real right the patent statute grants to a

6    patentee – namely the right to exclude others from practicing the invention.  The Federal

7    Circuit has recognized that direct competition strongly suggests irreparable harm.  *See Presidio*

8    *Components, Inc. v. American Technical Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir.

9    2012) ("Direct competition in the same market is certainly one factor suggesting strongly the

10   potential for irreparable harm without enforcement of the right to exclude."); *Douglas*

11   *Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two

12   companies are in competition against one another, the patentee suffers the harm – often

13   irreparable – of being forced to compete against products that incorporate and infringe its own

14   patented inventions.").

15       ARM's continuous denigration of the Eko '855 invention begs the question that if the

16   invention had no value, why didn't ARM simply stop using it, rather than continuing to

17   infringe the patent for nearly three-and-a-half years?  ARM has other single-serve reusable

18   coffee filters that both parties agree do not infringe the Eko '855 patent, and yet ARM engaged

19   in continuous infringing conduct for the entire period.  Certainly, this is strong evidence that

20   the Eko '855 patented features have value far and above the dismissive comments attributed to

21   it by ARM.  Accordingly, the Court finds that Eko has established irreparable harm caused by

22   ARM's infringing conduct.

23

24

1

### 2. Other Possible Remedies, Such as Monetary Remedies, Are Not Adequate

Eko argues that monetary damages cannot adequately compensate for the irreparable losses that Eko has incurred as a result of ARM's infringement, including lost market share and opportunities, growth, customer base, and sales that it would have had if ARM's infringing products did not exist in the marketplace. Dkt. 247 at 7. Similarly, Eko asserts that erosion of its reputation and brand distinction, loss of goodwill, having its innovation appear in competitors' products, and reduction of resources for further research and development are injuries that, by their nature, are very difficult to calculate, and therefore weigh in favor of an injunction. *Id.* ARM responds that Eko's efforts to license the '855 patent, including its pre-suit license offer to ARM, establishes that monetary damages are sufficient to compensate Eko for the alleged harm it suffered. Dkt. 259 at 9. ARM asserts that by multiplying an ongoing royalty rate by the number of units sold during the post-trial period of sales, the parties can adequately compensate Eko for any potential future harm. *Id.*

Because the parties are nowhere close to resolving the differences between themselves as to the value of the Eko '855 patent, the Court finds that monetary damages are not possible to calculate and do not provide an adequate remedy for the infringement. ARM's suggestion that the Court deny an injunction, but give the parties four months in which to negotiate a monetary resolution, is disingenuous. ARM waited until December 2017 to start working on its next version of a non-infringing reusable filter. The four month delay to request a possible settlement is not made in good faith. This involves only the expected time that ARM might be able to perfect its latest non-infringing alternative. ARM has no incentive to negotiate an agreeable license agreement if an injunction is denied, and the last thing that any of the parties needs is subsequent litigation over the amount due. Given the parties' history of litigation, the

ORDER - 18

simplest solution is to enjoin ARM from continuing to infringe Eko's patent. Nothing prevents the parties from actually negotiating a license with an injunction in place.

Although ARM is unwilling to acknowledge it, there was substantial evidence at trial showing that the infringing activities of ARM damaged Eko. The Court cannot aid ARM's efforts by making a finding that there are alternate remedies, such as monetary remedies, which would be adequate. In light of ARM's litigation conduct, the Court finds that there are no adequate alternative remedies.[9]

    3.    *Balance of Hardships*

ARM claims that it has 120,000 units that would be lost if an injunction were put in place, and therefore it seeks to sell the accused products for a short period of time post-trial (preferably four months) and then it will cease such sales. ARM asserts that when analyzing the "balance of hardships," the Court should focus on the duration of such a limited license, and "in light of this very short time period, the hardship to Eko of an ongoing royalty for a mere four months is minimal." Dkt. 259 at 10.

ARM's suggestion strains credulity. First, there is nothing that prohibits ARM from negotiating a limited license from Eko to distribute these infringing goods. Second, there is no reason why these infringing products cannot be held in inventory pending any appeal (or settlement of this case). Third, ARM has been infringing the Eko'855 patent for three-and-a-half years, but waited until last December to start getting serious about a new design around regarding the features of the '855 patent. Fourth, any injunction does not put ARM out of business, and it is not clear that it would have any substantial adverse consequences to ARM

---

[9] The parties are directed to meet and confer to discuss settlement of the claims for sales occurring from June 1, 2018 through the date of the injunction, and report back the progress they have made on this issue within three weeks of the date of this Order. If the parties cannot reach an agreement, the Court will set up a process for fixing the amount due.

1   other than requiring it to either hold inventory or obtain a license to sell the infringing

2   products.  ARM sells a large number of products, including several admittedly non-infringing

3   reusable coffee filters.  There are no legitimate hardships that militate against the imposition of

4   an injunction in this case.

5           On the other hand, allowing ARM to continue its infringement will continue to have a

6   negative impact on the business of Eko, and will continue to deny Eko the right to exclude

7   others from practicing the fruits of its invention.  Eko has been in a downward business spiral,

8   in part due to the litigation with ARM in its attempt to get ARM to honor its patent rights.

9   ARM should not be rewarded for this conduct.  The balance of hardships tips strongly in favor

10  of granting Eko injunctive relief.

11          4.      *The Public Interest Is Best Served by Issuance of an Injunction*

12          For nearly three-and-a-half years, ARM has used its superior financial position to

13  engage in scorched-earth litigation strategy, all the while continuing to infringe the Eko '855

14  patent.  ARM has non-infringing alternatives.  The public interest is not served by rewarding

15  this conduct.  Instead, it is better served by recognizing the property rights conveyed by a

16  patent and giving honor to those rights.  *See Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d

17  1341 (Fed. Cir. 2008) ("The patent laws promote this progress by offering a right of exclusion

18  for a limited period as an incentive to inventors to risk the often enormous costs in terms of

19  time, research, and development.").  The public interest strongly supports the imposition of an

20  injunction in the current circumstances.  Eko's motion for a permanent injunction, Dkt. 247, is

21  GRANTED, and will be issued forthwith.

22                          III.    CONCLUSION

23          Accordingly, the Court ORDERS as follows: (1) Eko's request for judgment as a matter

24  of law or a new trial on the issue of willfulness as well as enhanced damages, Dkt. 248, is

ORDER - 20

DENIED; (2) Eko's motion for pre- and post-judgment interest, Dkt. 248, is GRANTED IN

PART and DENIED IN PART; (3) Eko's motion for attorneys' fees and costs, Dkt. 256, is

GRANTED IN PART and DENIED IN PART; and (4) Eko's motion for permanent injunctive

relief, Dkt. 247, is GRANTED.

The Clerk is directed to send a copy of this Order to counsel for both parties.

DATED this 13th day of July, 2018.

JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 21